Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

FILED
U.S. DISTRICT COURT
DISTRICT OF [illegible]

# UNITED STATES DISTRICT COURT
### for the
_____ District of _____

2019 MAR 14  1:07
CLERK'S OFFICE
AT BALTIMORE

_____ Division   BY_____DEPUTY

| | |
|---|---|
| Adria Crump <br> *Plaintiff(s)* <br> (Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.) <br> -v- <br><br> Vinifera Imports Distributing <br> *Defendant(s)* <br> (Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.) | Case No. **RDB 19 CV 0787** <br> *(to be filled in by the Clerk's Office)* <br><br> Jury Trial: *(check one)* ☐ Yes ☐ No |

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION

I.  **The Parties to This Complaint**

   A.  **The Plaintiff(s)**

   Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

   Name: Adria Crump
   Street Address: 211 Garden Ridge Rd #D
   City and County: Catonsville, Baltimore
   State and Zip Code: Maryland 21228
   Telephone Number: (202) 603-4250
   E-mail Address: adriamcrump@gmail.com

   B.  **The Defendant(s)**

   Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

Defendant No. 1

    Name

    Job or Title *(if known)*

    Street Address

    City and County

    State and Zip Code

    Telephone Number

    E-mail Address *(if known)*

Resident Agent: John Fusciello
Vinifera Distributing
3630 Commerce Dr. Ste 105
Arbutus, Baltimore
Maryland 21228
410-247-6860

Defendant No. 2

    Name

    Job or Title *(if known)*

    Street Address

    City and County

    State and Zip Code

    Telephone Number

    E-mail Address *(if known)*

Defendant No. 3

    Name

    Job or Title *(if known)*

    Street Address

    City and County

    State and Zip Code

    Telephone Number

    E-mail Address *(if known)*

Defendant No. 4

    Name

    Job or Title *(if known)*

    Street Address

    City and County

    State and Zip Code

    Telephone Number

    E-mail Address *(if known)*

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

### C. Place of Employment

The address at which I sought employment or was employed by the defendant(s) is

| | |
|---|---|
| Name | Vinifera Distributor of MD |
| Street Address | 3630 Commerce Dr. #105 |
| City and County | Arbutus Baltimore |
| State and Zip Code | Maryland 21228 |
| Telephone Number | 416-247-6960 |

## II. Basis for Jurisdiction

This action is brought for discrimination in employment pursuant to *(check all that apply)*:

☐ Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

*(Note: In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☐ Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

*(Note: In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.)*

☒ Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

*(Note: In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☒ Other federal law *(specify the federal law)*:

retaliation

☐ Relevant state law *(specify, if known)*:

☐ Relevant city or county law *(specify, if known)*:

### III. Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A. The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

- [ ] Failure to hire me.
- [x] Termination of my employment.
- [ ] Failure to promote me.
- [ ] Failure to accommodate my disability.
- [ ] Unequal terms and conditions of my employment.
- [x] Retaliation.
- [ ] Other acts *(specify)*: _____

*(Note: Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)*

B. It is my best recollection that the alleged discriminatory acts occurred on date(s)

July 2017 - Nov. 1st, 2017

C. I believe that defendant(s) *(check one)*:
- [ ] is/are still committing these acts against me.
- [x] is/are not still committing these acts against me.

D. Defendant(s) discriminated against me based on my *(check all that apply and explain)*:
- [ ] race
- [ ] color
- [ ] gender/sex
- [ ] religion
- [ ] national origin
- [ ] age *(year of birth)* _____ *(only when asserting a claim of age discrimination.)*
- [x] disability or perceived disability *(specify disability)*

usage of a cane

E. The facts of my case are as follows. Attach additional pages if needed.

_____See Attached_____

*(Note: As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)*

## IV. Exhaustion of Federal Administrative Remedies

A. It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)*

_____March 5th 2018_____

B. The Equal Employment Opportunity Commission *(check one)*:

☐ has not issued a Notice of Right to Sue letter.

☒ issued a Notice of Right to Sue letter, which I received on *(date)* _____.

*(Note: Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.)*

C. Only litigants alleging age discrimination must answer this question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct *(check one)*:

☒ 60 days or more have elapsed.
☐ less than 60 days have elapsed.

filed a case in civil court who did NOT grant me additional time to seek counsel. - Dec 2018 - (3 x request)

## V. Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

Amounts exceed: 75,000

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

## VI. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 3/14/19

Signature of Plaintiff: *Adria Crump*
Printed Name of Plaintiff: Adria Crump

### B. For Attorneys

Date of signing: _____

Signature of Attorney _____
Printed Name of Attorney _____
Bar Number _____
Name of Law Firm _____
Street Address _____
State and Zip Code _____
Telephone Number _____
E-mail Address _____

Ms. Demi Deloach
EEOC investigator                                                                                                    09/25/1018


I, Adria Crump was hired mid-July 2017 by John Fusciello for Vinifera Distributing, while working I did not use my cane, but always had it with me in sight and or used it when necessary. I informed SSA of who I worked for and provided them with John Fusciello name and contact information, I also informed SSA that I was not using my cane. I was asked why I use my cane for by John Langlois between mid-July/August, John Langlois and I had a detailed conversation of why I use my cane for my knees.

Once hired I was informed that Preston would be my trainer and any questions should be directed to him. Each month a monthly physical inventory was done, when John Langlois and I did the end of July inventory I made ALL discrepancy changes in the system to support what was in the warehouse, because it did not match from the prior month. My position as the office coordinator was to receive, create and check orders before they went out of the office. Completing orders took the responsibility and integrity of both John Langlois and I to make sure the order went out correctly. August, John Langlois came to me and informed me he had comp time available to him, I informed him I'll find out what the procedure for the utilization of comp time. I spoke with Preston and he suggested I call Corporate and speak with Carol. Carol informed me of the policy and I informed John Langlois. John Langlois speaks with John Fusciello. John Fusciello came to the office and chastises me for not allowing John to utilize his comp time for some personal days he needed off, John never came to me about days off that he needed. I informed them, I contacted the persons I was supposed to contact, and that is what was told to me, if John Langlois needed additional time off he could have spoken to me and we could have arranged time off. At the end of August, we do another inventory which has discrepancies. I inform John Fusciello, his statement to me was that, "inventory will never come out right". I spoke with Preston regarding that statement and he says that's not correct, I spoke to Anna and she didn't understand why it wouldn't. At one point I was told I could not contact Preston by John Fusciello and Dominic Nocerino because I communicated all the things that were going on in the office with John Fusciello and John Langlois. I spoke with John Fusciello and discussed with him that Preston knowledge of software was needed for me to learn the complicated software. I was also informed by John Fusciello not to contact the Tax Revenue after having a gentleman come to office to assist me with something NO one within the company knew how to do other than the Maryland office employees. I told Preston and he couldn't understand why he wouldn't want me to call, after still having questions the next month Preston suggest I contact him for clarification, and I did. September inventory came around and there were more discrepancies in that inventory, I informed John Fusciello, Anna and Preston. I continued to speak to Anna with concerns because as she agreed with me that the load and blame will fall on me because all documentations go to headquarters on a monthly basis and it is my responsibility as well as John Langlois to have accurate inventory. Beginning October, I informed staff, by email that only persons that could pull inventory from the warehouse would be John Langlois and I also asked John Fusciello to join John Langlois and I with inventory for October, because on several occasions John Fusciello would chastised John Langlois and myself of how the inventory went, when all I did was account for the of inventory counted by John Langlois. The only persons in the warehouse on a daily basis or have access daily is John Langlois, John Fusciello, and me. Between July and October, John Langlois would receive an email printout from me, he would pull from inventory to complete order, once that was done I created an invoice with a 4-part detachment, after I checked the order, the order left the warehouse with John Langlois and 2 parts of invoice, 1 for customer and 1 for signature of receipt returned to office. On an occasion John Langlois left the warehouse without an order being checked by me and he pulled the order incorrectly, took all 4 invoices, he also has left the signed receipt copy with client along with other inconsistencies regarding his position as a driver/warehouse. I discussed with John Langlois regarding the matter, along with Preston and Anna. During these months on several occasions I discussed this with John Langlois the importance of an inventory with NO discrepancies, what John said about our inventory (that inventory would never be accurate) and how important it was that orders leaving the warehouse are checked and pulled accurately. He started to miscount inventory, pull incorrect products, smack himself wildly while doing monthly inventory, not follow thru with me when there were issues while on the road but contacted John Fusciello or other salesmen which created a he say he say. I contacted Anna to discuss this with her, I also spoke with Preston regarding everyday interactions. Anna suggested I write John Langlois up and then suggested I record our conversations. I wrote John up 6 times between September 1 and the end of October. Between September and October, I reinforced the policy and procedures and set new one's in place of how the shipment would leave the warehouse, should be brought to the front to be checked, how we were going to check

orders before and after the order is loaded on truck and before it leaves the lot with John in the driver's seat and checked once returning to office, because inaccurate inventory. I continued to communicate with Anna regarding my responsibilities, she seemed as though this is the normal for this office but continued to listen and direct me to continue to write John Langlois up. During the month of August, John Langlois would place boxes with labels against the wall, I asked him to make sure they are not against the wall and in the middle of floor, which is a procedure already in place, so I could see around the entire order along with making sure that all boxes were opened. I also informed him that I would check the orders once he is completed pulling the order, so we don't bump into each other. This discussion was had before the conversation when John Langlois and I had about the usage of my cane, as I was not using my cane, he agreed. John would continue to either not opening boxes or place orders against the wall where I did not have visual of the whole order. John would also continue to come in my space while I was checking order which compromised my stability, which I excused him, and he moved. This is after being questioned by John Langlois and having a conversation regarding the usage of my cane. The first occasion John Langlois let me know he was finished with pulling the orders for that day. As I am checking orders, he comes over to the area of the order I am working on, I reiterated, could he wait till I am finished, so that we are not bumping into each other and he agrees and waits. The second time it happened, John came from my right side, behind me to my left side, I didn't see him, but I felt him kneeling down beside me looking at boxes on my left side, which almost made me fall, at that point I spoke loudly to him as I discussed with him that I told him to let me know when he is finish so my stability is not compromised, these actions were after the conversation regarding the usage of my cane. During the months between August and October, I spoke with Anna regarding staff and inventory and she continued to tell me to write John Langlois up and record him but would not reprimand him or John Fusciello for the write ups or John Fusciello insisting inventory will never be accurate which it did not while I was there. Mid October I sent John monthly email to staff of office inventory date and asked John Fusciello to join the monthly inventory. On November 1, 2017, the day I was fired and day of inventory, John Fusciello got to the office around 10am, once there he asked me will it just be him and John Langlois conducting inventory and I said no, it will be you, me and John Langlois. After a few minutes John Fusciello came into the office with John Langlois and said John Langlois came to him about me recommending him for termination and making accusations towards me of my behavior towards John Langlois and how much of a soft-spoken guy he is. I informed both John Langlois and John Fusciello that I was not responsible for the inconsistencies in John Langlois responsibilities as the driver/warehouse and that John Langlois knows I communicated with him on ALL occasions before and after any write up or recommendation for termination came into effect regarding his responsibilities and the importance of accuracy of invoice and inventory. John Fusciello excused John Langlois from the office and was told he could leave. Throughout my employment with Vinifera Distributing, I communicated with Anna when necessary and Preston on a daily basis of these problems and proceeded with the write ups and recordings as requested by Anna, they were only sent to Anna, but Preston was aware of the recordings and conversations. There was not a need to inform John Fusciello. The one time I did approach John Fusciello with concerns regarding John Langlois (when John Langlois was on the road and he did not communicate with me which caused conflicts with scheduling and deliveries) he sided with John Langlois which prompted the continued write ups and reports to Anna and informing Preston. Once John Langlois was excused and left on November 1st, John Fusciello offered me the office position only and I informed him that you hired me for the Office Coordinator position that I have been doing well without missing any days of work since I was hired and declined his offer. John Fusciello then called Anna and Dominic Nocerino informing them of my termination. I spoke to them with the unknown of what was going on, not yelling or screaming, they agreed with John Fusciello to proceed with my termination. There was no hostility, yelling or arguing, just disagreements with the lies that John Langlois and John Fusciello came to me about my character. I waited while John Fusciello hand wrote a termination letter on November 1, 2017. John Fusciello would often listen to conversations from the conference room phone while I was speaking with Dominic Nocerino, Mr. Nocerino assistant at the time (not Anna), Preston and other staff as I walked in while he was doing so on several occasions. On the 3rd of November, I called Headquarters and spoke with Anna to see if a formal termination letter was going to be sent as they had known of the inconsistency with inventory and the inconsistency of responsibility of the driver.

Thank you in advance,

*Adria Crump*
Adria Crump
adriamcrump@gmail.com
202-603-4250